**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3197
_____

UNITED STATES OF AMERICA

v.

JOSE H. RIOS,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 1-15-cr-00246-001)
District Judge:  Honorable John E. Jones, III

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2021
Before:  CHAGARES, PHIPPS, and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  February 11, 2021)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jose Rios appeals the District Court's order granting the Government's motion to authorize a payment from Rios's prison account. For the reasons below, we will affirm the District Court's judgment.

In 2016, Rios pleaded guilty to drug trafficking and money laundering. His sentence included a special assessment and fine totaling $1200. Rios also agreed to forfeit property, including a money judgment of $698,400. By order entered November 2, 2018, the District Court entered a Final Order of Forfeiture in the amount of $298,000 and allowed the Government to seek substitute assets.

In August 2019, the Government filed a motion to authorize a payment from Rios's inmate trust account. It sought $970.96 to satisfy the remaining balance on his fine. The District Court granted the motion by order entered August 30, 2019. On September 10, 2019, the Government filed a motion for Forfeiture of Substitute Assets, seeking to deduct over $4600 from Rios's account as partial payment of his forfeiture judgment. The motion included a proposed order.

On September 20, 2019, Rios filed a notice of appeal which stated that he appealed to this Court "requesting a Stay on the final judgment by Judge John E. Jones ordering Forfeiture of Substitute Assets to the United States Marshals Service entered in the action on September 10, 2019." He attached the unsigned, proposed order to the notice of appeal.

Jurisdiction

The Government argues that we lack jurisdiction over the appeal because the District Court has not yet acted on the Government's September 10, 2019 motion for forfeiture of substitute assets. To the extent that Rios seeks to appeal the District Court's future decision on that issue, the Government is correct that we lack jurisdiction. Cf. Marshall v. Comm'r Pa. Dep't of Corrs., 840 F.3d 92, 96 (3d. Cir. 2016) (explaining that notice of appeal filed before the decision to be challenged does not ripen upon final judgment).

In his brief, Rios states that the appeal concerns the August 30, 2019 order which authorized the deduction of $970.96 from his account. In response, the Government observes that the notice of appeal did not designate the August 30 as the order appealed. However, pursuant to our practice of liberally construing notices of appeal, we may exercise jurisdiction over the August 30 order if: "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010). Here, there is a connection between the August 30 order and the issue Rios sought to appeal— both involve deductions from Rios's prison account. Rios made it apparent in his brief that he sought to appeal the August 30 order, and the Government has had a full opportunity to brief the issues. Thus, the defective notice of appeal will not prevent our exercise of jurisdiction.

3

The Government also contends that the appeal is untimely as to the August 30 order. However, the District Court subsequently granted Rios an extension of time to file his notice of appeal. See Fed. R. App. P. (4)(b)(4).[1] Thus, the notice of appeal was timely filed, and we have jurisdiction over the appeal of the August 30 order.

Merits

Rios appears to argue that the withdrawal of $970 towards the fine exceeded the terms of his plea agreement. He asserts that he agreed that his fine was payable every three months in an amount, after a telephone allowance, equal to 50 percent of the funds deposited into his prison account.[2] Rios, however, has not shown that the $970 exceeds 50 percent of the funds deposited into his prison account, which had a balance of over $5000 at the time.[3] Rios argues that the payment plan in the plea agreement did not allow for obtaining or freezing all the money in his account. However, the Government's

---

[1] While the District Court did not specify the length of the extension it was granting, it noted that it considered the notice of appeal to be timely filed. Thus, we presume that the District Court intended to grant an extension sufficient for us to deem the notice of appeal to be timely filed.

[2] Rios's criminal judgment likewise states that during the term of imprisonment, "the fine is payable every three months in an amount, after a telephone allowance, equal to 50 percent of the funds deposited into the defendant's inmate trust fund account." The parties do not indicate how much the telephone allowance is. It appears that the telephone allowance may be $75 a month. See 28 C.F.R. § 545.11(b) ("This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS).")

[3] Rios attaches a print-out of the balances in his prison account from July 31, 2019 until October 22, 2019. It indicates that he received $1525 in deposits from Western Union during that time, including a $1000 deposit into his account on September 3, 2019. Assuming a telephone allowance of $75, the Government would be entitled to over $650 from those few months alone.

4

withdrawal of $970 did not obtain or freeze all of the money in Rios's account. Rios has not shown that the payment at issue goes beyond the terms of the schedule in the plea agreement.[4]

The Government argues that the $5000 in Rios's prison account was a "substantial resource." See 18 U.S.C. § 3664(n) (one who receives substantial resources during incarceration is required to apply the resources to pay fine). In response, Rios contends that the gradual accumulation of prison wages does not constitute "substantial resources" under § 3664(n). See United States v. Hughes, 914 F.3d 947 (5th Cir. 2019). However, he does not assert that the money in his account is solely the accumulation of prison wages.[5]

The District Court did not err in granting the Government's motion to authorize payment. Accordingly, we will affirm the District Court's August 30, 2019 order.

---

[4] Rios also argues that he was never given notice of the Preliminary and Final Orders of Forfeiture. He appears to assert that he was never informed of a specific amount of money that he was forfeiting. However, the August 30 order did not deduct any money from his account based on the Final Order of Forfeiture.

[5] Rios does not describe in his briefs how much he earns each month in wages after the $25 deduction towards his fine through the Inmate Financial Responsibility Program. In a motion to proceed in forma pauperis on appeal, Rios stated that he was paid $30-$50 a month by UNICOR. To the extent that "UNICOR" on his account print-out refers to his prison wages after the $25 deduction, there were $28.21 in deposits over that same three-month time period. Thus, it does not appear that the substantial funds in Rios's account are the accumulation of prison wages.